U.S. DISTRICT COURT

DISTRICT OF NEW JERSEY - TRENTON

```
---------------------------
HOSPIRA, INC., et al.,      :    Docket No.: CV-09-4591
                            :
               Plaintiffs, :     Trenton, NJ
                            :
      vs.                   :    November 16, 2010
                            :
SANDOZ INTERNATIONAL GMBH   :
et al.,                     :
                            :
               Defendants. :
---------------------------
```

TRANSCRIPT OF CONFERENCE HEARD BEFORE
THE HONORABLE TONIANNE J. BONGIOVANNI, U.S.M.J.

TRANSCRIPT ORDERED BY:

    DANIELLE RENEE STIPO
    (Hill Wallack, LLP)

A P P E A R A N C E S:

    THOMAS J. MELORO, JR. ESQ., (WILKE FARR)
    Attorney for Plaintiffs

    EUGENE CHANG, ESQ. (WILKE FARR)
    Attorney for Plaintiffs

    MATTHEW D'AMORE, ESQ., (MORRISON & FOERSTER)
    Attorney for Defendants

AudioEdge Transcription, LLC
425 Eagle Rock Avenue - Suite 201
Roseland, New Jersey  07068
(973) 618-2310
www.audioedgetranscription.com

<u>I N D E X</u>

11/16/10

<u>ARGUMENT</u>:                                          <u>PAGE</u>

    By:  Mr. D'Amore                    6, 14, 16, 22

    By:  Mr. Meloro                         12, 20

    By:  Mr. Chang                              15


<u>COURT DECISION</u>

Reserved

1          THE COURT: Good morning.  How are you?

2          MR. D'AMORE:  Good morning, Judge.

3          MR. MELORO:  Good morning, Your Honor.

4          MR. CHANG:  Good morning, Your Honor.

5          THE COURT:  Thanks for being available.  I set this

6    up to see if we can come up with a practical approach or, at

7    least, understand the ramifications of what I am doing.

8          As you know, I had sent out through my law clerk,

9    Tom, a notice that because Sandoz Canada is a separate entity,

10   separate party, and as such is entitled to their own rights, I

11   am permitting that they serve their invalidity and non-

12   infringement contentions.

13         And I therefore, recognize that for -- I'm sorry,

14   did I just mis-- mis-speak.  I want to make sure I said,

15   Sandoz Canada.

16         MR. D'AMORE:  You did, Your Honor.

17         THE COURT:  Okay.  And then I -- I recognize that

18   therefore it might be a distinction without a difference for

19   Sandoz, Inc.

20         And what I have asked is that I was willing to hold

21   a hearing on the diligence issue regarding Sandoz, Inc.   And

22   then there was a fluffy of correspondence indicating that that

23   might run a foul of attorney client privilege.  And then there

24   was some suggestion that they, Sandoz, Inc., just be allowed

25   to join in Sandoz, Canada.

The Court                                        4

1          So, getting back to the perhaps, distinction without

2     a difference.  As I understand it, certainly if the patents

3     are held to be invalid, they are invalid as to everyone, I

4     guess, in perpetuity.

5          If there is non-infringement, then it's -- it would

6     be as to that product by that party.  And perhaps here it

7     makes no difference if there is non-infringement.  Then that

8     certainly would apply to everyone, as well.

9          What I don't want to have happen, and I just want to

10    be clear, because I am taking this 3.7 extremely seriously and

11    I'm not suggesting that the parties aren't either, but my

12    course of action in all likelihood in these cases going

13    forward is to hold a hearing.  And unless there is really, for

14    example, a discreet distinct article that somehow arises after

15    the fact, perhaps I won't need to hold a hearing.

16         But if I have a question about diligence and

17    specifically, what a party should have known when, I

18    think I need to have testimony and give the other side

19    the opportunity to cross-examine and challenge that

20    assertion.

21         And I recognize that Sandoz, Inc. is not

22    interested or not in the position, so you say, to put

23    on the person, who would testify as to diligence

24    because of attorney client issues.  Okay.  Thank you

25    for your patience.

1        So, here is -- here is my thought.  I'm

2    concerned about the sword and shield issue.  And I'm

3    not inclined to grant Sandoz, Inc.'s application

4    without a hearing and some sort of testimony.  If

5    Sandoz, Inc., is simply going to ride the coattails of

6    Sandoz Canada, Inc. and whatever arguments, whether

7    it's collateral estoppel, res judicata, and you want

8    to make those arguments after the fact when there's a

9    ruling, I do not have any objection to that.  I just

10   don't want you to be an extra voice in this process

11   and file additional papers or make any arguments.  I

12   want Sandoz Canada, Inc. to be essentially a stand

13   alone.

14        For the third time, perhaps the distinction,

15   in this case without a difference, but I don't want to

16   set bad precedent for other cases, when I may have

17   very separate entities, separate defendants, clearly

18   not at all related standing in the shoes of Sandoz

19   Canada and Sandoz, Inc.  And I don't want to hear "it

20   doesn't matter because no harm, no foul since they are

21   able to make these arguments."  I'm still going to

22   hold the Sandoz, Inc. persona responsible for

23   establishing why they had not -- why they have not

24   failed to exercise diligence, if that's the way to put

25   it.

1          So, Mr. Abraham, on your end, let me hear

2     your thoughts as to whether that works for you.

3          MR. D'AMORE:  Your Honor, this is -- this is

4     Mr. D'Amore from Morrison and Foerster.  And thank you

5     for -- for hearing us today.

6          I think Your Honor has -- has identified

7     that it -- that it -- that it -- that it is our view

8     that there would be no difference at the end of the

9     case whether -- whether Incs. contentions are -- are

10    allowed in and of their own right or not.

11         And but -- we -- but, I understand Your

12    Honor's -- Your Honor's views in that regard, as well.

13         On the record currently as it stands,

14    Canada's contentions are contained additional

15    information that Inc.'s does not -- that Inc.'s do not

16    have.  So, while I don't think we're in a position to

17    say Inc. is going to -- on the -- on the -- on the

18    record as it stands, Inc., Inc. will -- will step back

19    and not have it's own voice.  Right now, the -- the

20    contentions as they're stated are ones -- it contains

21    more -- more references than the other.

22         Now, today's pitch, Your Honor, would like

23    to inquire into Sandoz Inc.'s diligence.  I don't want

24    to stay that we're foreclosing the possibility of

25    putting in additional evidence in that regard.

Argument - D'Amore                    7

 1              I -- I appreciate Your Honor's sense that

 2      they're -- that they are -- that you're interested in

 3      having a hearing.  I've -- I've looked at the

 4      contentions case law, and I haven't seen precedent for

 5      a hearing.  I've seen precedent for -- I did for

 6      supplemental declarations and the like, which I think

 7      is what -- and generally those come from attorneys of

 8      -- of record, because diligence can only be shown

 9      based on the work of -- of -- of trial counsel.

10              So, I think the way the Courts have handled

11      that if they -- if additional evidence is -- is -- is

12      requested, it's provided by -- by a declaration.

13              And I think that's something that if Your

14      Honor would be -- would be interested in, we can talk

15      about.

16              THE COURT:  Okay.  Two thoughts.  One, is I

17      like to be a trailblazer.  The second more serious

18      thought is I suppose I somewhat disagree with you that

19      trial counsel is the only way to satisfy me that you

20      exercised diligence.

21              For example, if you have an inventor or some

22      scientist, understanding -- or some expert, now

23      understanding that a piece of prior art has some

24      significance, than that's the person that would

25      testify that they brought it to Counsel's attention

1     and -- and on such and such a date they realized.

2            Now, I -- I recognize that it would be

3     touching upon what they informed trial counsel, but I

4     don't see it that it's only the attorney that needs to

5     testify.

6            Quite frankly, I don't -- I don't

7     contemplate that in every single case I'm going to

8     require a hearing.  But if I have a situation where

9     we're talking about what someone could have known

10    based on the -- or could have asserted based on the

11    information that was before them, I really do think

12    that that's something I want to have subject to cross

13    examination.  Because reading that -- the declarations

14    just simply often look like, "I have to" versus "no,

15    you have not" and that does no good to me.

16           So, that's really where I come down with the

17    idea of requiring a hearing to determine whether or

18    not someone should have known that this is an

19    invalidity contention or whatever the situation may

20    be, that could have been raised sooner.

21           Essentially, what's the significance of this

22    piece of prior art or this article?  If it's simply:

23    when did you get it in your hands?  And this was just

24    discovered, then that's something that a declaration

25    in all likelihood would address.

1          So, that's a concern I have in this

2     particular case.  And frankly, I have it in another

3     case, as well, where -- where we're talking about a

4     monumental amount of new pieces of prior art.

5          MR. D'AMORE:  I -- I understand that, Your

6     Honor.  This is Mr. D'Amore, again.  So, if I -- if I

7     may, the -- the -- the facts in this case are not of

8     the -- the category that you identified where there's

9     some scientist or -- or expert to identify the pieces.

10         The facts are that, I think, as we've set

11    forth in -- in our pleadings, a couple of the

12    references were identified and then became -- we're --

13    we're identified earlier this year and then we be-- we

14    realized there importance a little later this year.

15         Some of the references, some of the

16    documents really are documents produced by plaintiffs

17    and were not documents that we could have found

18    earlier.  So -- so to the extent, Your Honor, would

19    like more specificity in that regard, what did we know

20    and when did we know it?

21         What I might suggest is we put those facts

22    in by declaration.  And if Your Honor would still be

23    interested in having a hearing or having a cross

24    examination, that's something we can talk about.  But

25    I do think in this case, the facts are when did the

Argument - D'Amore                10

1    references come to -- come to, really, Counsel's

2    attention?

3              THE COURT:  Well, I can tell you that on the

4    first prong, where you -- you mention that you had

5    information in your hands and you didn't realize the

6    significance until X date, that's precisely what I

7    want to have a hearing on.

8              Because if you just failed to pay attention,

9    failed to line it up, because of volume or the like

10   that, to me, might not be enough to say that you were

11   diligent because you looked at five million other

12   documents and then these two got buried.

13             I need to understand what about that

14   document should -- or those items -- should have been

15   glaring to you.  And, again, I think that's an area

16   where I want to have cross examination on that.

17             I don't know whether it only needs to be by

18   counsel, because I don't honestly know who behind the

19   scenes is assessing the significance of that document.

20

21             So, whoever's the person who's reviewing the

22   document and then realizing that it may be the basis

23   for a contention of some sort, is perhaps the person

24   that needs to get on the stand.  And I don't know that

25   that's only trial counsel.

1          But in short, Mr. D'Amore, I guess what I'm

2     doing is leaving your client with an alternative.  The

3     first would be if you want to just simply rely upon

4     what Sandoz Canada, Inc. does with it's contentions

5     and argue after the fact regarding res judicata or

6     collateral estoppel if those are the proper terms,

7     that's fine.  But, I would not have you raising

8     separate arguments on behalf of Sandoz, Inc.

9          If you want Sandoz, Inc. to be able to file

10    documents in this matter and argue in this matter as

11    to additional contentions, then I need to have a

12    hearing.

13          MR. D'AMORE:  I understand that, Your Honor.

14    And I said -- and you're not -- as I understand what

15    you're saying here, you're not foreclosing Inc. from

16    relying on it's initial contentions, if you --

17          THE COURT:  No.  I'm certainly not.

18    Absolutely not.  It's just a matter of whether or not

19    you were able to amend.

20          MR. D'AMORE:  I -- I -- I -- I understand

21    that.  I think the -- the -- delta between the -- that

22    is something I can talk over -- I will -- I will

23    present that alternative to my client, Your Honor.  I

24    don't have an answer for you right this moment.

25          THE COURT:  --

1          MR. D'AMORE:  But I will be able to get you

2     a responsive letter on that.  Today is Tuesday.  I

3     expect within a week.

4          THE COURT:  Perfect.  All right.  Anything

5     on the plaintiff's side regarding this issue?

6          MR. MELORO:  Yes, thank you, Your Honor.

7     This is Tom Meloro, from Wilke Farr.  I -- I -- I

8     think that at this point, we need to wait to hear

9     defendant's position clearly.

10          If they wish to amend, we -- we -- we would

11     like the opportunity to cross examine.  I hear Counsel

12     to say that they would continue to rely on the

13     affidavit of their trial counsel and therefore, you

14     know, for the reasons that the Court has indicated, we

15     would like the opportunity to cross examine.  And we

16     think there would be serious questions about the

17     diligence issue.

18          To the extent that Sandoz, Inc. is going to

19     withdraw it's request to amend and rely only on it's

20     original contentions and then attempt to argue

21     collateral estoppel or res judicata later if it turns

22     out the Sandoz Canada prevails on some defense that

23     Sandoz, Inc. did not have, I -- I would just note that

24     we would reserve our right to oppose any action by

25     Sandoz, Inc. at that point to invoke collateral

1    estoppel or res judicata.  But my expectation is that

2    if that ever became a live issue, that the Court would

3    address it at that point.

4              THE COURT:  That's right.  Okay.

5              The next thing, and I don't know how far I

6    can get with this because frankly, I did receive your

7    letter regarding the location of the depositions

8    yesterday afternoon.  And last night I happened to be

9    speaking on a patent panel, of all things, up at Seton

10   Hall that was sponsored by Gibbons.  So, I didn't have

11   the opportunity other than while I was waiting to take

12   the stage to review it.

13             But it seems to me, let's see if we can make

14   any progress with this.  It seems to me you have

15   really the issue of the depositions of the two

16   doctors, A-A-N-T-A-A.  How do you say that name?

17             MR. MELORO:  That's Dr. Aanta.

18             THE COURT:  Aanta, okay.  And then V-I-R-T-

19   A-M-E-N.  Virtamen?

20             MR. MELORO:  I -- I think it might be

21   Virtamen.  But, we -- we -- we can go by whatever

22   pronunciation we want, at least for today.

23             THE COURT:  That's true.  In the record,

24   it's all -- it all sounds the same.  But, and then

25   there are other folks that you are intending to

 1    depose.  So, let me start with those other folks.

 2              Are there any doctors or inventors, experts,

 3    who are going to be deposed in Finland already by

 4    agreement?

 5              MR. D'AMORE:  Your Honor, this is -- this is

 6    Mr. D'Amore.  We have not agreed to depose anyone in

 7    Finland, as of this time, other than the two doctors

 8    you've identified, plaintiffs have proposed one

 9    witness, Dr. Karjalainen.  And what we've told them is

10    if -- we only want his deposition, we want it in the

11    United States.  We only want his deposition if he's

12    going to come to the United States for trial.  And we

13    don't need that now.

14              THE COURT:  All right.

15              MR. D'AMORE:  And then there's a 30V6

16    witness, of course, but that's a separate question.

17              THE COURT:  And where's the 30V6 witness

18    taking place?

19              MR. D'AMORE:  It hasn't been agreed yet.  We

20    have said that they need to come to the jurisdiction

21    where they sued.  Plaintiff's had said it should take

22    place in Finland.

23              THE COURT:  All right.  And who is that

24    witness?

25              MR. D'AMORE:  His name I can't pronounce.

1    It begins with an H.

2         THE COURT:  All right.  That's that very

3    long name.

4         MR. CHANG:  That's Hopolina (phonetic).

5    Your Honor, this is Eugene Chang, from Wilke Farr, for

6    plaintiff.

7         That -- the corporate witness is Dr.

8    Hopolina.

9         THE COURT:  Right.  And I see him.  He's

10   mentioned on page 8 of the joint submiss-- submission.

11   And -- all right.  So, you folks are also having a

12   dispute as to where his deposition should take place.

13        MR. CHANG:  Your Honor, our position on Dr.

14   Hopolina is, if they're going to be in Finland anyway,

15   they should take his deposition there.

16        THE COURT:  Right.  But if -- what if we

17   didn't have these other witnesses in play?  Then the

18   30V6 would generally be here; right?

19        MR. CHANG:  Yes.  The idea is that, you

20   know, here, if everybody is bringing their witnesses

21   to the forum, and in general, we've been -- we've

22   agreed to do so with a lot of our other witnesses, if

23   that's the general rule people are playing by, then we

24   would do that and then that makes sense.

25        Here, they have -- they're insisting that

 1    they're Germany witnesses be deposed in Germany for

 2    their witnesses' convenience.  And it would obviously

 3    be burdensome for our witnesses to come over from

 4    Finland.

 5            But if everybody agrees to bring their

 6    witnesses to the jurisdiction, we would -- we would do

 7    so, as well.

 8            THE COURT:  Now, I hate to say this but it

 9    sounds like someone may have made an agreement without

10    locking in the Finland witnesses.  Because it sounds

11    like you folks have already agreed to -- to do the

12    depositions of the defendant's witnesses in Germany

13    and that you didn't get an in kind explicit agreement

14    regarding the Finnish folks.

15            MR. D'AMORE:  Your Honor, this is -- this

16    Mr. D'Amore.  We -- they actually noticed the German

17    witness for Germany.

18            THE COURT:  Uh-huh.

19            MR. D'AMORE:  To the extent that -- that it

20    needs to be discussed, we're happy to -- to -- to

21    discuss that with plaintiffs if there's an alternative

22    location that would be appropriate.

23            THE COURT:  Well, I don't think it's any

24    secret that the way the Court generally operates is

25    what makes sense.  And what makes sense involves

```
 1    whether or not, the witnesses are plaintiffs who has

 2    brought this suit.  I recognize that plaintiff brought

 3    this suit here in New Jersey.  They should be expected

 4    to then have some, perhaps, additional inconvenience

 5    for their witnesses, if that's the phrase we want to

 6    use.  But there is also the very practical aspect of

 7    the economics.

 8              Where are all the documents located?

 9              MR. D'AMORE:  Right now, documents that have

10    been produced, Your Honor, are pretty --

11    electronically and in our offices.  This is Mr.

12    D'Amore.

13              THE COURT:  So, if you're doing these

14    depositions of whichever witnesses, if you were --

15    when you travel to Germany, for example, you're going

16    to have to bring all of them with you, print them out,

17    download them, whatever, over there?

18              MR. D'AMORE:  Correct.  And for Finland, I

19    also need to bring a -- I need to bring a court

20    reporter.  I need to bring a videographer.  I need to

21    put them all up.

22              THE COURT:  Uh-huh.

23              MR. D'AMORE:  Because Finland does not have

24    those -- those -- those facilities.  And the costs are

25    tremendously expensive compared to the United States.
```

Argument - D'Amore          18

1     THE COURT:  And I have actually heard that

2  before.

3          Now, tell me the issue with Dr. Aanta.  It

4  sounds like you are not in agreement as to whether or

5  not the contract that he executed permits him or that

6  he's signing on essentially to be required to travel

7  in the event that his testimony is necessary, that

8  he's now no longer a client.

9          I'm sorry.  He's now no longer an employee

10  of the plaintiff.  And therefore, we have this concern

11  about whether or not he can be compelled.  And I know

12  that there's a little discussion in the papers that

13  you've submitted.  So, just talk to me a little bit

14  about that.

15          MR. D'AMORE:  Certainly, Your Honor.  Our

16  understanding is that he was -- this is Mr. D'Amore.

17  He was an employee of the plaintiffs at one point in

18  time.  I think he -- I -- my understanding and this

19  may be subject to -- to correction, is that he

20  continues to be  an advisor or a consultant with them.

21

22          But the -- the important aspect in terms of

23  the contract is that his assignment for the invention

24  is very clearly, and has been held by other -- other -

25  - other courts to require him to testify in any legal

1    proceeding and do everything possible to aid -- , to

2    obtain and enforce proper patent protection for this

3    invention in the United States.

4           So, the -- the -- the -- this is discussed

5    in the Erik-- Erickron (phonetic) case.  The language

6    is very similar in terms of the notice that it

7    provides to Dr. Aanta.  That he needs to testify in

8    legal proceedings and that it's being -- and that it's

9    directed to obtaining patent protection in the --

10   enforcing patent protection in the United States.

11          And that's the kind of agreement the Courts

12   have enforced to compel a witness like Dr. Aanta to

13   come to the United States.

14          THE COURT:   All right.  And I do see that

15   the plaintiffs have cited contrary support or support

16   for their position in the submission, as well.

17          I want to, frankly, want to take a look at

18   those cases and then decide what impact Dr. Aanta has.

19   But just again so I'm clear, we have Dr. Aanta, at

20   least at this point, being in disagreement as to

21   whether it's appropriate because he's no longer an

22   employee.

23          We have Dr. Virtamen also, is -- he's an

24   employee, and the question is whether he's in Finland

25   or here.

1      And then Dr. Hopolina who is the 30(b)(6),

2  who presumptively would be here, and the question then

3  becomes whether or not if -- if you're going to

4  Finland, you just go there for him, as well.

5      Is there anyone else that I'm missing?  I'm

6  just flipping through.

7      MR. MELORO:  Your Honor, this is Tom Meloro.

8  The -- the only other witness was one mentioned --

9      THE COURT:  Oh.  Yeah.  Karjalainen or

10  however you say that?

11      MR. MELORO:  It -- I -- something to that

12  effect.  I think it's Karjalainen?  And I think -- he

13  is a former employee.  He does not have this sort of

14  agreement that's at issue with the analysis regarding

15  Dr. Aanta.

16      Plaintiffs have -- plaintiffs have told

17  defendants that we may call him as a trial witness.

18      THE COURT:  And he's the one who you just

19  mentioned, Mr. D'Amore, that if he comes here, if

20  they're calling him at trial, and he comes here,

21  you'll take care of him when he arrives.

22      MR. D'AMORE:  That's correct, Your Honor.

23      THE COURT:  Okay.

24      MR. D'AMORE:  If, you know -- that's

25  correct.

1          MR. MELORO:  Your Honor, since -- since we

2     obviously aren't going to know until we get closer to

3     trial whether we will call him as a trial witness, we

4     are offering him for deposition now.

5          And it would be unfair, I think, for us to

6     have to go through all the fact and expert discovery

7     and -- and -- and then to have a deposition take place

8     shortly before trial, while we're in the midst of all

9     our final trial preparations, etcetera.  So, that --

10     that was the reason why we offered him for a

11     deposition now.

12          THE COURT:  All right.  Well, here would be

13     my suggestion.  If I rule in favor of Hospira and the

14     defendants are traveling for any purpose over to

15     Finland, then you could add him to the mix.  Then just

16     for the court reporters sake, the name is K-A-R-J-A-L-

17     A-I-N-E-N.

18          If I am requiring that the depositions of

19     all the Finnish individuals, doctors, take place here,

20     then I would leave it to Hospira whether in advance of

21     trial, you would want to have or ask him to shlep

22     here, as well.

23          And perhaps if that happens, you folks can

24     agree to a video deposition.  You know, that could be

25     used at trial.  So, depene essia (phonetic) in

1    essence.  That's certainly something that you can

2    consider.

3              All right.  So, let me take a look at the

4    case law regarding Dr. Aanta.  And I'll get you folks

5    a decision as soon as possible.

6              Did you have dates that you were targeting?

7    I don't recall.

8              MR. D'AMORE:  Your Honor, that's I think

9    part of the issue.  They've proposed four or five days

10   of deposition across two weeks.  That's part of the

11   expense.  It begins on -- on -- my understanding is

12   they proposed a date beginning Friday, December 10th,

13   beginning again Monday December 13th, and then

14   continuing -- continuing thereafter.  That's time that

15   I've got to pay to -- to put up the court reporter and

16   videographer in Finland under their schedule.

17             THE COURT:  Uh-huh.

18             MR. D'AMORE:  I don't know how -- whether

19   their dates are fixed.  Certainly we're available

20   after that and in January.  And if the witnesses are

21   coming here, then they don't need to be -- to be done

22   altogether.

23             THE COURT:  Okay.

24             MR. D'AMORE:  If I might just add one point,

25   Your Honor.

 1              THE COURT:  Yes.

 2              MR. D'AMORE:  Depending on your -- your --

 3     actually two points.  One is there's no reason that if

 4     -- that if we're waiting, that we can't get their 30V6

 5     witness on the schedule here in the United States.  I

 6     -- I understand the efficiencies to doing it

 7     altogether.  But, at the same time, the fewer days,

 8     I've got to -- I have to spend in Finland, the -- the

 9     -- the -- the less expense of it is on -- on my

10     client.

11              And the second is to the extent, Your Honor

12     is -- is factoring in the expense, a -- a cost

13     shifting, we would req-- we would request that if any

14     witnesses need to be deposed in Finland, that some

15     cost shifting apply.

16              THE COURT:  I know that after your meet and

17     confer, you couldn't come up with an agreement.  I

18     don't know if you're revisiting the Germany

19     depositions at all in light of this discussion.

20              But I certainly invite you that if you can

21     come up with a compromise, perhaps the 30(b)(60 comes

22     here, and you agree that you'll -- you will do Dr. K.,

23     as I'll call him, perhaps in Finland, and maybe you

24     can get the defendants to agree to go over for a

25     shorter more finite period.  And if you work any of

The Court                    24

1   that out, certainly, let me know.

2          My plan is to pull the case law and I will

3   get you a decision as soon as possible.  But let me be

4   practical for a minute.  I don't want to add to the

5   expense of what you may have to incur assuming I send

6   you folks to Finland.  And, you know, again, I'm

7   speaking very practical, very plainly.

8          Even if I get you a decision within the next

9   week, I don't know what that does to reservations and

10  the like.  So, if you want to set aside some time

11  perhaps in January where you have dates on hold that

12  in the event I am ordering that anything occur in

13  Finland, that you, at least, can keep some costs down

14  by having the opportunity to book your tickets 30 days

15  in advance or the like.  I'm fine with that.

16         I know we have a 30 -- the 30 month stay

17  expires in -- when is it?  January, 2012, and that

18  you're anxious to move things along.  But I just offer

19  that as a potential compromise.  Because even if I

20  turn around and get you a decision this week, you've

21  still got just a couple of weeks to book all of this.

22  So, I throw that out there.

23         If you work anything out, bless you.  And

24  just let me know asap, otherwise, I'll add this to my

25  patent pile.

 1            MR. MELORO:  Your Honor, this is Tom Meloro.

 2    We very much appreciate that.  And I -- I would expect

 3    that if there's going to any further discussion, I

 4    mean, thus far, the Germany depositions have been cast

 5    in stone.  But if there's going to be any further

 6    discussion, I would anticipate that that would take

 7    place in the next day or two.  So perhaps, we would

 8    just report back in a couple of days, obviously, if we

 9    have an agreement, but maybe if we've talked and we

10    don't.  We'll know the --

11            THE COURT:  That would be great.  Even if

12    you just send a quick little email, it doesn't have to

13    be anything fancy.  Deal, no deal.  And I'll get the

14    message.

15            MR. MELORO:  Thank you.  And then as far as

16    dates are concerned, we -- we had reserved a time that

17    I think Mr. D'Amore outlined in Finland.  We'd be

18    prepared to go ahead.  And I think if we got a ruling

19    in a week from the Court, that would be sufficient

20    time at least from our perspective.            To the

21    extent that those dates didn't happen, I don't know

22    the availability of the witnesses at this point.  Dr.

23    Hopolina is a fairly high ranking official at Orion.

24    Dr. Aanta, who's one of the witnesses, who was a

25    former employee, he hasn't worked at the company for

1   quite some time.  He has a very high ranking position

2   at a research institution.

3            So, I don't just know.  I'd hope that

4   whatever happens, we can -- we can stick to dates that

5   the witnesses have blocked out.

6            THE COURT:  All right.  As I said, I just

7   threw that out there as an option for you folks to

8   contemplate.  And I'll wait -- well, I won't wait.

9   I'll do the research anyway.  And if I don't have to

10  put pen to paper regarding this issue, that's fine.

11  I'll just wait for your letter.  But assuming you

12  can't resolve or narrow it, then I will get a decision

13  to -- for you as -- as soon as possible, mindful that

14  this might happen in December, so you need to know.

15           And -- and, Your Honor, Mr. Meloro and I

16  will and Mr. Chang and I will -- will speak, and if

17  there's something that we can -- can work out, we'll

18  advise, Your Honor.

19           THE COURT:  Great.  Okay.  And I'll also

20  hear from you, from Sandoz, about the contentions and

21  what your client wants you to do.

22           MR. D'AMORE:  Great.

23           THE COURT:  Great.  Thanks, guys.  If I

24  don't talk to you, enjoy Thanksgiving.

25           MR. D'AMORE:  All right.  Thanks.

1                    THE COURT:   Bye-bye.

2                    MR. D'AMORE:  Bye-bye.

3                         (End of proceeding)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## C E R T I F I C A T I O N

I, Lisa M. Urban, the assigned transcriber, do hereby certify the foregoing transcript of proceedings in the U.S. District Court on November 16, 2010 on CD number 11/16/09, Index Nos. 11:33 am to 12:05 pm is prepared in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings to the best of my knowledge and ability.


    S/ Lisa Urban
LISA M. URBAN, AOC NO. 585
AudioEdge Transcription, LLC


Date: November 18, 2010